IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RUTH VIGNA, *et al.*, | : | |
| | : | Case No. 1:15-cv-51 |
| Plaintiffs, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part Plaintiffs' |
| EMERY FEDERAL CREDIT UNION, | : | Unopposed Motion for Approval of |
| *et al.*, | : | Stipulation of Settlement and Release for |
| | : | Collective Class Members (Doc. 93) and |
| Defendants. | : | Plaintiffs' Unopposed Motion and |
| | : | Memorandum of Law for Approval of |
| | : | Attorneys' Fees and Costs (Doc. 97) |

This matter is before the Court on Plaintiffs' Unopposed Motion for Approval of Stipulation of Settlement and Release for Collective Class Members ("Settlement Approval Motion") (Doc. 93) and Plaintiffs' Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees & Costs ("Attorneys' Fees Motion") (Doc. 97).

**I. BACKGROUND**

This action was initiated on January 26, 2015 by Plaintiffs Ruth Vigna and Irina Abidin[1] on behalf of themselves and similarly situated individuals who worked for Defendants Emery Federal Credit Union and Emery Financial Services, Inc. (collectively, "Emery") as loan processors and were allegedly denied overtime compensation and minimum wage in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*.

This action is a spin-off of another FLSA collective action brought before the undersigned against Emery, *O'Neal v. Emery*, 13-cv-22. In *O'Neal*, the Court granted conditional certification to a class of loan officers, but denied conditional certification to a class

---

[1] In addition to Plaintiffs Vigna and Abidin, this case was also brought by a third Plaintiff, Lovie Johnson. Johnson has since filed a Stipulation of Dismissal (Doc. 35) and is no longer a party to this action.

of loan processors. *O'Neal v. Emery Fed. Credit Union*, No. 13-cv-22, 2014 WL 6810689, at *6–8 (S.D. Ohio Dec. 3, 2014). Following the Court's Order, on January 26, 2015, Plaintiffs brought this action on behalf of a class of loan processors. On June 25, 2015, Plaintiffs filed this Motion for Conditional Certification requesting the Court to conditionally certify a class of all persons who worked as loan processors or in similar positions for Emery at any time during the three years prior to the filing of the Complaint. The Court granted in part and denied in part that Motion on January 13, 2016. (Doc. 66.)

On September 26, 2016, Plaintiff filed two unopposed motions: Plaintiffs' Settlement Approval Motion (Doc. 93) and Plaintiffs' Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs (Doc. 94).[2] On October 4, 2016, the Court held a status conference with the parties regarding the pending Motions and asked counsel to review the its Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs for mistakes and to closely review counsel's records for secretarial and/or associate work and formally file those billing records.[3] (Doc. 98.) Following the October 4, 2016 conference, Plaintiff filed a third version of its Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs (Doc. 97), which is now before the Court.[4]

After conducting a thorough review of Plaintiffs' counsel's billing records and the supplemented third Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs, the Court held a second status conference with counsel on October 26, 2016. At that time, the Court expressed its concern about the amount of attorneys' fees being requested, an

---

[2] Plaintiffs also filed a second version of the Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs the following day. (Doc. 95.)

[3] The Court permitted the billing records to be filed under seal, as counsel argues the entries are protected by attorney client and/or work product privilege. (*See* Doc. 98.)

[4] The prior Motions (Doc. 94, 95) were denied as moot. (*See* October 4, 2016 Docket Entry.)

issue that is addressed more fully herein.  As the matter is now ripe for the Court's ruling, the Court will so proceed.

## II. ANALYSIS

### A. The Proposed Settlement

Pursuant to Plaintiffs' Unopposed Motion and Memorandum of Law for Approval of Stipulation of Settlement Agreement and Release for Collective Class Members (Doc. 93), the parties have negotiated a Stipulation of Settlement Agreement and Release (the "Settlement") that will resolve the claims of 75 Collective Class Members.[5]  Plaintiffs request the Court approve the Settlement, the parties' proposed Notice of Settlement and the claim process for Collective Class Members as set forth within the Settlement.

Pursuant to the terms of the Settlement, the parties agree to settle all claims for $410,000 (hereinafter, the "Settlement Fund"), which represents payment of 55% of wages allegedly owed based upon the report by Plaintiffs' expert, Dr. Liesl Fox.  Plaintiffs request the Court to approve the following proposed deductions from the Settlement Fund: attorneys' fees in the amount of $135,300 (constituting 33% of the Settlement Fund), litigation expenses and costs in the amount of $10,750, and enhancement payments to Plaintiffs Vigna and Abidin in the amount of $5,000 each.  The remaining $235,950 of the Settlement Fund is to be divided among the 75 eligible Collective Class Members, the average recovery for which is approximately $3,386, but is to be calculated individually based upon Dr. Fox's report.[6]

---

[5] The proposed Settlement is docketed as Doc. 93-1.

[6] Dr. Fox calculated each Class Member's best case scenario in claiming minimum wage and overtime pay.  For purposes of the Settlement, the parties have determined each Collective Class Member's *pro rata* share of the Settlement based upon estimated damages for that employee as set forth in Dr. Fox's report.  Pursuant to the Settlement, 50% of the employee's payment will

The 75 Collective Class Members will be mailed a Notice of Settlement, which is also subject to Court approval.[7] The Notice sets forth and explains each employee's individual payout and includes a claim and release form.

### B. Standards for Approval of an FLSA Settlement

An employee's claims under the FLSA generally are non-waivable and may not be settled without supervision of either the Secretary of Labor or a district court. *Gentrup v. Renovo Serv.*, *LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011). Thus, "[t]he proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter a stipulated judgment only after scrutinizing the settlement for fairness." *Id*. "If a settlement in an employee FLSA suit reflects 'a reasonable compromise over issues,' such as FLSA coverage or computation of back wages that are 'actually in dispute,' the court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'" *Id*. (citing *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1354 (11th Cir. 1982)).

Courts in the Sixth Circuit consider a number of factors in determining whether a class action settlement is "fair, reasonable and adequate:" (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Id*. (citing *Int'l Union*, *United Auto.*, *Aerospace and Agric. Implement Workers of*

---

constitute wages, and the remaining 50% constitutes payment for liquidated damages, prejudgment interest, penalties and/or consideration for the release.
[7] The proposed Notice of Settlement was filed for Court review and approval as Doc. 93-1 at PageID 1255–57.

*Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007); *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). These factors have also been applied by Courts in evaluating the fairness, reasonableness, and adequacy of an FLSA settlement. *Id.*; *see also Crawford v. Lexington-Fayette Urban Cty. Gov't.,* No. 06-cv-299-JBC, 2008 WL 4724499, at *2–9 (E.D. Ky. Oct 23, 2008); *Rotuna v. W. Customer Mgmt. Group, LLC,* 2010 WL 2490989, at *5–6 (N.D. Ohio June 15, 2010).

Counsel argue that all factors weigh in favor of the proposed Settlement being fair, reasonable, and adequate. First, counsel assert that the risk of fraud and collusion is low, as counsel conducted continuous and thorough negotiations over an extended period of time. Second, counsel argue that collective claims under the FLSA are complex, and litigating them is expensive. Third, counsel claim that discovery was extensive, as they reviewed thousands of pages of discovery, including voluminous electronic pay data. Fourth, counsel have extensive experience litigating collective claims under the FLSA, and their evaluation of the likelihood of each party succeeding impacted negotiations and the terms of the Settlement. Fifth, counsel believe that the Settlement is fair and reasonable. Sixth, counsel argue this factor is not applicable because this is not a Rule 23 class; however, counsel conveyed that communications with other Collective Class Members demonstrate a preference for early resolution of the matter. Seventh, counsel argue that public policy favors settlements, particularly in a complex FLSA case.

The Court agrees that nearly all of the terms of the Settlement are fair and reasonable, particularly in light of the fact that the total Settlement Fund constitutes a 55% recovery of wages as estimated by the expert's report. The Court acknowledges that FLSA matters are complex in nature and involve thorough review of pay records, which can be time-consuming. The Court

also is persuaded that the seventh factor, or public policy favoring early resolution of claims, weighs in favor of the Settlement being fair and reasonable. However, although it is pleased with the overall recovery and other terms of Settlement, the Court is concerned about the percentage of the Settlement Fund counsel request to be designated for attorneys' fees. The Court will address this concern *infra*. The Court therefore concludes that the above factors support a finding that the Settlement is fair and reasonable and resolves a bona fide dispute over the FLSA claims asserted. The Settlement is approved, but for the percentage of attorneys' fees to be designated to counsel.

### C. Attorneys' Fees and Litigation Costs

Under to the terms of the Settlement, Defendants have agreed to pay Plaintiffs' counsel $135,300 for attorneys' fees, representing 33% of the Settlement Fund, and $10,750 for expenses and costs incurred by counsel in the prosecution of the claims at issue. Defendants also agreed not to oppose a motion for approval of attorneys' fees and expenses. In support of their request for fees and costs, Plaintiffs filed the Attorneys' Fees Motion presently before the Court. (Doc. 97.)

Pursuant to § 216(b) of the FLSA, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "The determination of a reasonable fee must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *Gentrup*, 2011 WL 2532922, at \*4 (citing *United Slate, Tile and Composition Roofers, Damp and Waterpoof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 501 (6th Cir. 1984)).

The Sixth Circuit has approved both the "lodestar" and percentage of the fund method of payment of attorneys' fees. *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993). The Court should consider the unique circumstances of the case to determine which method is most appropriate. *Id*. Consistent with the preference of many courts within the Southern District of Ohio, the Court finds the circumstances of this case render the most appropriate method to be to award a reasonable percentage of the fund with reference to the lodestar and resulting multiplier. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). The lodestar figure is used to confirm the reasonableness of the percentage of the fund. *Id*. (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)). In determining the reasonableness of the fee award, the Court will consider the following factors: (1) the value of the benefit rendered to the class (*i.e*., the results achieved); (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Id*. (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)).

Counsel argue that the six *Ramey* factors weigh in favor of awarding the requested fee. First, counsel contend that the overall settlement of $410,000 provides a substantial benefit to the class, as it constitutes 55% of total wages owed to the Collective Class Members as determined by Plaintiffs' expert report. After deductions for the requested attorneys' fees, costs, and class representative incentive award, $259,950 will be left to be distributed to 75 Collective Class Members, and counsel argue that the amount being paid to each class member is fair. The

average settlement is $3,386. Additionally, settlement allows the parties to avoid the uncertainty of trial and appeal.

Second, counsel argue that the public interest favors the requested award, as the lawsuit has provided a vehicle for many Collective Class Members, many of whom may have lacked the motivation or resources to pursue their claims individually, to recover unpaid wages. Thus, the 33% contingency fee awards counsel for compensating attorneys to achieve results that could not have been achieved individually.

Third, counsel argue that they took on considerable risk of nonpayment in litigating the case on a contingent basis. Doing so meant that counsel were prepared to make the investment with the real possibility of an unsuccessful outcome and no fee award. Furthermore, it would have been unlikely that Collective Class Members would have been able to retain counsel under another type of fee arrangement (*e.g.*, an hourly fee arrangement). Counsel argue that they have spent significant time on work that was necessary to litigating the claims at issue in this case, and that all hours worked were reasonable and necessary.

Fourth, counsel argue that value of the services merit the 33% award. Counsel argues that contingency fee arrangements are typical and should be accepted here. In addition, counsel argue that the lodestar cross check and a multiplier of 1.77 justifies the 33% award. Counsel argue that multipliers of 2.0 have been utilized by judges in the Southern District of Ohio, rendering the lower than 2.0 multiplier requested here reasonable and appropriate. Counsel argue, also, that the requested rates of $450/hour for partner work and $250/hour for associate work are reasonable and in line with the adjusted Rubin Committee rates.

Fifth, counsel argue that the complexity of FLSA litigation justifies the fees sought. Lastly, sixth, counsel argue that class counsel's skill, as evidenced by their reputations and experience and expertise, justify the requested award.

The Court agrees that most of the *Ramey* factors favor the requested award, but is concerned that the fourth *Ramey* factor, the value of services rendered, and the lodestar cross-check do not support the requested award. Counsel argue that an attorneys' fee award of 33% of the Settlement Fund is a fair and reasonable award that should be approved by the Court. In support of its position, counsel have submitted time records for attorneys Brendan Donelon, Daniel Craig, and Deborah Grayson and the online professional resumes of Mr. Donelon and Mr. Craig. (*See* Doc. 97-1; 98.) Mr. Donelon submitted time records for 109.5 hours for himself and 54.3 hours for "associate" level work.[8] (Doc. 98.) Mr. Craig submitted time records for 22.3 hours of work on this case, and local counsel, Ms. Grayson, submitted time records for 7.2 hours of work. Mr. Donelon requests compensation at a rate of $450/hour for himself, Mr. Craig, and Ms. Grayson. For work Mr. Donelon performed himself but designed as lower, intermediate associate skill level, he requests compensation at a rate of $250/hour. Counsel argue that all three attorneys have over twenty-one years of experience, and that the rates requested are consistent with the Rubin Committee rates.

Courts in this district often refer to the 1983 Rubin Committee rates as a basis for comparison. *Hunter v. Hamilton Cty. Bd. Of Elections*, No. 1:10-cv-820, 2013 WL 5467751, at *17 (S.D. Ohio Sept. 30, 2013). Judges in the Southern District of Ohio often refer to the 1983

---

[8] The Court expressed its concern at its first status conference with counsel regarding attorneys' fees that many of the entries for which Mr. Donelon was seeking compensation at partner-level rates were for associate or secretarial work. Mr. Donelon reviewed entries the Court flagged and now requests most or a portion of those time entries be billed at a lower "associate" rate of $250/hour.

Rubin Committee rates and apply a 4% annual cost-of-living allowance to measure the reasonableness of fees requested. *Id*. That committee arrived at the following categories and hourly rates for 1983: Paralegals—$37.91/hour; Law Clerks—$23.96/hour; Young Associates (2 years of experience or less)—$61.77/hour; Intermediate Associates (2 to 4 years of experience)—$71.62/hour; Senior Associates (4 to 5 years of experience)—$82.81/hour; Young Partners (6 to 10 years of experience)—$96.39/hour; Intermediate Partners (11 to 20 years of experience)—$113.43/hour; and Senior Partners (21 or more years of experience)—$128.34/hour. *Id.* at n.9.

Counsel calculate that the adjusted rate for a senior partner with 21 or more years of experience in 2016 is $466.90. By the Court's calculation, the adjusted senior partner rate for 2015 is $443.46; the intermediate partner rate for 2015 is $407.94 and for 2016 is $424.59. Mr. Donelon and Mr. Craig are each 1995 graduates from law school. (Doc. 97-1 at PageID 1346, 1351.) In 2015, each had 20 years of experience, which is a lower rate per the Rubin Committee rates. Counsel did not submit a CV for Ms. Grayson. Her online profile indicates that she is admitted to practice in 1977, so she would fall within the senior partner rate on the Rubin Committee rate schedule. (*See* http://meizgray.com/attorneys.) In sum, the rates requested a slightly higher than the adjusted Rubin Committee rates.

The Court has expended considerable time reviewing counsel's billing statements, requested hourly rates, and other cases in this district involving a request for attorneys' fees from a common fund. The Court has also held two conferences with the parties, during which it expressed concern over the requested amount of attorneys' fees. In particular, the Court is concerned that a 33% award is on the high end of fee requests. Not only is the overall percentage of the fund high, but so too are the requested hourly rates and multiplier. For

10

instance, Mr. Donelon requests a $450/hour rate for both himself and Mr. Craig, but a significant portion of Mr. Donelon's hours were billed in 2015, and all of Mr. Craig's hours were billed in 2015. As previously noted, a lower Rubin rate would apply for those hours ($407.94). Similarly, all of Ms. Grayson's hours were billed in 2015, rendering the 2015 senior partner Rubin Committee rate of $443.46 most applicable. Furthermore, unlike other cases in which the Court has approved awards, counsel here have not indicated that any attorney has significantly reduced his or her fees in this case, aside from billing lower-level work at a lower rate after the Court expressed its concern.

In addition, the Court is concerned that this case has not been particularly complex, as it was a spin-off from the *O'Neal* case, which settled. In the previous *O'Neal* case, which was much more complex and lengthy than this case, the Court approved a 29.9% attorneys' fee award. (*Id*. at Doc. 111.) In this case, counsel is requesting a higher billing rate as well as a larger overall percentage of the Settlement Fund. The Court considers the *O'Neal* case to have been more complex and the outcome more uncertain than this case. Given that much of the briefing involved similar issues and case law and was repurposed for the instant case, the Court is not persuaded that this case was significantly more complex or time-consuming. For these reasons, the Court finds that an overall award lower than 29.9% is appropriate here. Therefore, the Court will not approve the requested attorneys' fees award of 33% of the Settlement fund, with a lodestar cross-check of $450/hour and $250/hour and 1.77 multiplier.

The Court is nonetheless satisfied with counsel and finds that an award is certainly appropriate. Accordingly, it will approve an award of 25% of the Settlement Fund, or $102,500. The Court will apply a $425/hour rate for Mr. Donelon, Mr. Craig, and Ms. Grayson, and a $200/hour rate for work deemed associate level. Applying this rate to the total number of hours

billed, the total value of services without a multiplier is $69,522.50. The Court will apply a multiplier of 1.47, which is deems appropriate under the circumstances and due to counsel's strong results in the settlement of this case. Thus, the lodestar cross-check supports an attorneys' fees award of 25% of the Settlement Fund.

Counsel also asks the Court to approve payment for litigation expenses totaling $10,750. (*See* Doc. 97-2.) These expenses relate to filing and service fees, printing and administering class notice and opt-in forms, processing consent forms, researching class member information, travel costs, deposition costs, and expert fees. The Court has reviewed the statement of expenses and agrees that these costs are related to the litigation and were necessary to the prosecution of the case. Accordingly, the Court approves payment of litigation costs totaling $10,750 from the Settlement Fund.

### D. Class Representative Fee

Counsel requests that the Court approve incentive payments of $5,000 to each named Plaintiff. Counsel argues that the incentive payments compensate Plaintiffs Vigna and Abidin for their significant contributions to the litigation, without which the case would not have been initiated. Counsel asserts that these Plaintiffs provided key information to counsel which assisted in investigating, filing, litigating, and resolving the action. Plaintiffs Vigna and Abidin also were deposed and traveled for deposition. Counsel argues the amount requested is modest and does not significantly reduce the amount of settlement funds to the other Collective Class Members, and the incentive payment advances public policy by encouraging other individuals to come forward to protect the rights of others in representative actions.

The Court is satisfied that the payment of the two incentive awards is justified by each Plaintiff's contribution to this case and is reasonable and appropriate under the circumstances. Accordingly, a $5,000 incentive award to each Plaintiffs Vigna and Abidin is approved.

### E. Collective Action Settlement Notice

The parties request the Court to approve the Collective Action Settlement Notice (Doc. 93-1 at PageID 1255–56), which includes a Claim and Release Form (*id.* at PageID 1257). The Court is satisfied that the Notice fairly and reasonably describes the terms of Settlement. However, in light of the Court's ruling on attorneys' fees, counsel is instructed to revise the Notice accordingly and submit it for final review to the Court within ten days of this Order's issuance.

### F. Settlement Administration

Finally, the parties request that the Court approve the proposed Settlement administration. The parties propose that within seven days of the Court's approval of Settlement, Plaintiffs will provide mailing addresses for the 75 Collective Class Members along with each person's individual gross payment as determined under the Plan of Allocation. Defendants will send the Notice, including the Claim and Release Form, within thirty days of receiving that information. Collective Class Members' executed Claim and Release Forms must be postmarked within forty-five days of the Defendants' mailing. Within forty-five days of the claim deadline, Defendants will issue payment to the participating Collective Class Members. The Court is satisfied that the proposed process for Settlement administration is fair and reasonable.

## III. CONCLUSION

For the reasons set forth herein, the Court **GRANTS IN PART** Plaintiffs' Unopposed Motion for Approval of Stipulation of Settlement and Release for Collective Class Members

13

(Doc. 93) and Plaintiffs' Unopposed Motion and Memorandum of Law for Approval of Attorneys' Fees and Costs (Doc. 97).  The Motions are **GRANTED** but for the percentage of attorneys' fees to be allocated to counsel from the Settlement Fund.  The parties are instructed to modify the final Settlement to include a 25% award of attorneys' fees, as opposed to a 33% award, for a total award of $102,500.  The Court approves the request for litigation costs in the amount of $10,750, the award of $5,000 incentive awards to each Plaintiff Vigna and Plaintiff Abidin, and the proposed method for Settlement administration.  Counsel are instructed to submit a modified Notice for final approval within ten days of issuance of this Order.

    **IT IS SO ORDERED**.

                                              S/Susan J. Dlott_____
                                              Judge Susan J. Dlott
                                              United States District Court